# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| BIJUNKA MCCOWIN § | |
| § | |
| v. § | CIVIL ACTION NO. 6:08-cv-421 |
| § | |
| SCHWERMAN TRUCKING CO. § | |

## MEMORANDUM AND OPINION

Now before the Court is Defendant's Motion for Summary Judgment (Doc. No. 35). Having considered the parties' briefing, the undisputed facts and the applicable law, the Motion is hereby GRANTED and Plaintiff's claims are dismissed with prejudice.

## I. Background

Plaintiff, an African-American woman, brought this employment discrimination action after she quit her job as a truck driver with Defendant. Plaintiff has alleged that Defendant treated her differently — including passing her over for positions, suspending her, and construcively discharging her — because of her race and gender.

Plaintiff began working for Defendant on January 10, 2007. Earvin McWhorter hired Plaintiff and was her supervisor until July 23, 2007, when Mike Reeve took over as supervisor. Plaintiff quit her job on August 20, 2007.

Plaintiff was hired as a company driver, but she asked to be assigned to three different positions while she worked for Defendant: owner operator, driver trainer, and the utility person position. Non-African-American men were chosen for each of these positions rather than Plaintiff.

Defendant employed several drivers as owner operators. These drivers owned their trucks, and Defendant leased them, with the owner as the driver. These drivers earned higher pay and had

more control over the vehicle they drove (since it belonged to the driver). At the time she was hired and during the six months she worked for Defendant, Plaintiff repeatedly requested to be made an owner operator. But Defendant had imposed a moratorium on new owner operators at the Longview terminal, where Plaintiff worked. Despite the moratorium, Defendant hired male drivers as owner operators, one in June 2007 and the other in July 2007. Both of the drivers were non-African-American men.

Plaintiff also requested a position as a driver trainer, but she was never selected. Plaintiff trained new drivers and received additional compensation for the training time, but she was never formally trained or designated as a trainer. In both March and July of 2007, Defendant selected a white male driver trainer (one at the Longview terminal and one at the Jacksonville terminal).

Plaintiff also expressed interest in a utility position that became available while she worked for Defendant. Previously, the job had involved mowing, sweeping, and trash removal, but in 2007, Defendant added vehicle maintenance as an additional job responsibility. When Plaintiff inquired about the job, her supervisor said that he had tried a woman in the position before without success. Defendant hired a man for the position on July 6, 2007.

In addition to being passed over for these positions, Plaintiff also complains that she was suspended and constructively discharged because of her gender and race.

Plaintiff's supervisor McWhorter suspended her for three days for refusing to accept a load on her day off, a violation of company policy. Plaintiff testified that the dispatcher never called her. Plaintiff claims that she was suspended because of her race and gender.

Finally, Plaintiff claims that the truck she was assigned had serious mechanical problems that made it unsafe to drive. Plaintiff's repeated requests to be reassigned to another truck or have the truck repaired went unanswered. Unwilling to continue under these circumstances, Plaintiff walked

off the job on August 20, 2007. The Friday before she quit, Plaintiff called the vice president of human resources to complain about her treatment. She never heard back from him. Plaintiff claims that the company assigned her to a dangerous vehicle because of her race and gender. She further claims that this resulted in a constructive discharge.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on June 11, 2008. The charge included all of the claims raised in Plaintiff's Complaint.

## II. Summary Judgment Standard

The Court should grant a motion for summary judgment if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411 (5th Cir. 2008). A fact is material if it might affect the outcome of the suit under the governing law. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon*, 560 F.3d at 326. When ruling on a motion for summary judgment, the Court must view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Sossamon*, 560 F.3d at 326. .

Under Rule 56, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact." *Duffie v. U.S.*, 600 F.3d 362, 371 (5th Cir. 2010) (internal quotation omitted). If the moving party fails to meet this initial burden, the motion must be denied regardless

of the nonmovant's response. *Id.* (internal quotation omitted). If the movant meets the burden, however, Rule 56 requires the opposing party to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Anderson*, 477 U.S. at 250; *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008); *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996).The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita*, 475 U.S. at 585; *U.S. ex rel. Farmer*, 523 F.3d at 337; *Duffie*, 600 F.3d at 371.

## III. Analysis

### A. Title VII and Exhaustion of Administrative Remedies

Plaintiff has asserted both gender and racial discrimination claims under Title VII. Failure to timely exhaust administrative remedies is a procedural bar to Title VII discrimination claims. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 521 (5th Cir. 2008). A timely charge must be filed within 300 days from the challenged employment practice. 42 U.S.C. § 2000e-5(e)(1); *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir. 1997). Plaintiff filed her charge of discrimination on June 11, 2008. Accordingly, any claims based on acts prior to August 16, 2007 — which is 300 days prior — is barred under this rule. Defendant has raised this defense as to each of Plaintiff's Title VII claims. This defense does not affect Plaintiff's racial discrimination claims, which Plaintiff alternatively alleges under § 1981.

Several of Plaintiff's Title VII claims are barred by this procedural requirement. The driver trainer positions were filled prior to August 16, 2007, and thus any violations based on those actions

are procedurally barred. Similarly, the utility position was filled in July 2007, and Plaintiff's claim based on Defendant's hiring a man for the utility position are thus barred.

Neither party provides the dates of Plaintiff's suspension, but it is undisputed that Plaintiff's supervisor Earvin McWhorter imposed the suspension and that McWhorter was no longer Plaintiff's supervisor after July 23, 2007. Thus, the suspension occurred no later than July 23, 2007. Therefore, Plaintiff cannot bring a Title VII claim based on her suspension.

Conversely, Plaintiff's constructive discharge claim and her claim that Defendant refused to hire her as an owner operator are not barred since relevant acts occurred after August 16, 2007. Plaintiff claims that Defendant's mistreatment of her forced her to walk off the job on August 20, 2007, which is within the relevant period covered by Plaintiff's charge of discrimination. On August 17, 2007, the Friday before Plaintiff quit her job, Plaintiff called the vice president of human resources and left a message about Defendant's continued refusal to hire her as an owner operator. This request also fell within the relevant time period, and thus Plaintiff's Title VII claim based on her request to be hired as an owner operator is not procedurally barred.

### B. The Owner-Operator Position

Plaintiff claims that Defendant refused to hire her as an owner-operator because of her race and gender. As discussed above, Plaintiff continued to inquire about the owner-operator position until shortly before she left, and thus this claim is not procedurally barred. But Plaintiff has failed to demonstrate a genuine issue of material fact, so this claim fails as a matter of law.

Plaintiff's racial discrimination claim is based on circumstantial evidence, and therefore is subject to a burden shifting standard. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004). The first step in the analysis requires Plaintiff to establish a *prima facie* case. *Id.* For a failure

to hire or promote claim, Plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she was subject to an adverse employment action, and (4) others similarly situated were more favorably treated. *Id.* In response to Plaintiff's *prima facie* showing, Defendant must respond by articulating a legitimate, nondicriminatory reason for its actions. *Id.*

Finally, Plaintiff bears the ultimate burden of demonstrating a genuine issue of material fact as to whether Defendant treated her differently because of her race. *Id.* Plaintiff may satisfy that burden by demonstrating that Defendant's reason is merely pretext. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000). Plaintiff may also show that Defendant was motivated by both legitimate and illegitimate reasons. *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 98–100 (2003).

Under this burden shifting analysis, Plaintiff has not presented evidence to support a prima facie case. Specifically, she has not shown that she was treated differently from similarly situated individuals. Individuals are similarly situated when they are in nearly identical circumstances. *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478. Plaintiff compares her situation to that of two non-African-American male drivers who were hired as owner operators. But these two drivers differed in material ways from Plaintiff.

Defendant had imposed a moratorium on new owner-operators before Plaintiff was hired. Yet it is undisputed that exceptions were made for two drivers, both of whom were men and were not African-American. Plaintiff points to these drivers to demonstrate her disparate treatment. But Defendant explains that one of the drivers was hired as an owner operator prior to the moratorium, and his start date was delayed after his truck was impounded. The other driver was assigned to a different terminal, and one of Defendant's clients insisted that he be assigned to their account. Neither of these circumstances is "nearly identical" to Plaintiff's circumstances.

### C. The Driver Trainer Position

Plaintiff also claims that Defendant's decision not to select her as a driver trainer was motivated by her race and gender. As discussed above, Plaintiff's gender discrimination claim is procedurally barred.

As to Plaintiff's race-based claim, she has failed to present any evidence to overcome Defendant's stated non-discriminatory reason for choosing white drivers instead of her. Defendant presented evidence that both drivers were considerably more experienced than Plaintiff. One driver had twenty more years experience than Plaintiff, and the other driver had nine more years experience than Plaintiff and had even assisted in training Plaintiff. Finally, one of the driver trainers was assigned to a different terminal than Plaintiff. Plaintiff has made no attempt to demonstrate that Defendant's explanation is pretextual.

### D. The Utility Position

Plaintiff alleges that she was not offered the utility position because of her race and gender.[1] As discussed above, Plaintiff's gender discrimination claim under Title VII is procedurally barred. Furthermore, no genuine issue of material fact exists based on Plaintiff's race-based claim.

At the summary judgment stage, Plaintiff must establish a *prima facie* case, which includes presenting evidence that she was qualified for the position. Plaintiff has failed to do so.

Defendant has offered summary judgment evidence that the utility position required mechanical experience. Plaintiff admitted in her deposition that she is not qualified to perform

---

[1] Plaintiff's Complaint appears to limit the utility position claim to gender discrimination, but at the summary judgment stage, Plaintiff is arguing both gender and racial discrimination as to the utility position. The Court will consider both the gender and racial discrimination claims.

mechanical skills. Defendant also presented evidence that the person hired for the utility position possessed the required mechanical skills. Plaintiff argues that Defendant did not have a written description of the utility position and that the position previously did not require mechanical experience. But Plaintiff has not presented alternative evidence of the job qualifications or any evidence that she was qualified for the position. Plaintiff makes a blanket statement in her Response that she was qualified for the position, but she does not support this allegation with *any* summary judgment evidence. Plaintiff's failure to present evidence that she was qualified for the utility position prevents her from establishing a *prima facie* case. Accordingly, Plaintiff's racial discrimination claim based on the utility position fails as a matter of law.

### E. Suspension

Plaintiff alleges that Defendant suspended her for three days because of her gender and race. As addressed above, Plaintiff's gender-based claim is procedurally barred. Furthermore, her race-based claim fails as a matter of law because Plaintiff has not established a *prima facie* case.

Plaintiff claims that she was suspended for three days, allegedly for refusing to work on her day off. Plaintiff does not dispute that refusal to work on a day off was a violation of company policy. Instead, Plaintiff testified that a white driver refused a load and was not suspended. Plaintiff also testified that she was never contacted by the dispatcher about the load in question.[2]

Plaintiff's *prima facie* showing must include evidence that she was treated differently than other similarly situated individuals. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004). Similarly situated individuals must be in nearly identical circumstances as Plaintiff. *Id.* The

---

[2]Plaintiff's only reference to the suspension claim in her Response is in her statement of facts. She does not reference the claim in her argument.

only comparative evidence presented by Plaintiff does not pertain to a driver who was similarly situated to Plaintiff. It is undisputed that a white driver was not suspended after refusing a load. That driver reported to her supervisor that she was ineligible to drive under Department of Transportation (DOT) regulations because of driving hours she had recently logged. Plaintiff does not claim to have raised a similar concern to her supervisor. Furthermore, Defendant has presented evidence that her supervisor suspended two other drivers — both white — for refusing a load. Accordingly, Plaintiff has not presented evidence that she was treated differently than similarly situated drivers, so her suspension claims must be dismissed.

### F.     Constructive Discharge

Plaintiff also claims that Defendant constructively discharged her because of her race and gender. As discussed above, some of the offending actions occurred within the relevant period, and thus Plaintiff's gender claim is not procedurally barred. But Plaintiff's constructive discharge claim fails as a matter of law.

Plaintiff claims that Defendant mistreated her based on her race and gender. Plaintiff specifically complains of the company's failure to repair her truck when requested, as well as Defendant's refusal to make Plaintiff an owner operator. Plaintiff claims that this mistreatment resulted in a constructive discharge. For the reasons discussed below, the Court finds that Plaintiff's claim fails as a matter of law.

A constructive discharge results when an employer makes working conditions so intolerable that the employee is forced to quit. *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). The test is "whether a reasonable persons in plaintiff's shoes would have felt compelled to resign." *Id.* The following factors are relevant: "(1) demotion; (2) reduction in salary; (3) reduction

in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status]." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (alteration in original).

Constructive discharge imposes an even higher standard than a hostile work environment claim. *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 301 (5th Cir. 2001). A hostile work environment claim requires harassment that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). Plaintiff's claim of constructive discharge must exceed that standard.

Plaintiff testified that she was assigned to a truck that was shaking, dangerous, and made a loud popping noise (although she testified that the popping noise did not present a safety concern). She asked to be reassigned, but was not. A company mechanic looked at the truck and determined that there was probably an issue with the steering column. He told Plaintiff that the part would not be ordered until it broke completely. Plaintiff also testified that white and male drivers were able to get their equipment fixed. Plaintiff informed her supervisor McWhorter about the mechanical issues, and he looked at the truck. But he did not reassign Plaintiff. Plaintiff did not infrom McWhorter's successor of the mechanical trouble or report the issue to McWhorter's supervisors.

The treatment experienced by Plaintiff would not allow a reasonable jury to find that a constructive discharge occurred. As a matter of law, a reasonable person in Plaintiff's shoes would not have found the treatment so intolerable that she was compelled to resign. (In fact, several other drivers were assigned to the same truck before and after Plaintiff.) At most, Plaintiff was frustrated

and concerned about the state of her assigned truck. But laws prohibiting employment discrimination are not general civility laws, and they only prohibit actions that are severe or pervasive. *See, e.g., Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007) (finding that a supervisor making ten to fifteen calls with sexual overatures for a period of four months was sufficiently severe or pervasive to support a finding of discrimination). Typically, "[e]xcept in extraordinary circumstances, employment discrimination should be addressed within the existing employment relationship." *Williams v. Admin. Review Bd.*, 376 F.3d 471, 480 (5th Cir. 2004).

Plaintiff has not presented evidence to support a finding that her treatment by Defendant was "extraordinary" or sufficiently severe or pervasive such that a reasonable person would have felt compelled to resign. Accordingly, her constructive discrimination claim must be dismissed.

## IV. Objections to Summary Judgment Evidence

Defendant filed a motion to strike (Doc. No. 53) some of Plaintiff's summary judgment evidence. However, even considering the evidence presented by Plaintiff, her claims fail as a matter of law. Accordingly, the Court does not reach the evidentiary objections.

## V.   Conclusion

For the reasons discussed above, Defendant's Motion for Summary Judgment (Doc. No. 35) is hereby GRANTED.  Accordingly, Plaintiff's claims are dismissed with prejudice.

**It is SO ORDERED.**

**SIGNED this 2nd day of September, 2010.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE